**410**  YOE, IMPL'D, ETC. *v.* THE PEOPLE.  [Sept. T.,

Syllabus.

# HARRIET A. YOE, Impleaded, etc.

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

1. EVIDENCE—*in criminal cases—of the right to show the character of a witness—in a capital case.* Where, upon the trial of a capital case, a witness, who had acted as a detective, was asked the question by the prisoner's counsel, upon cross-examination, "What is the character of your associates, in your business as a detective?" *Held,* that the inquiry was objectionable, as tending to degenerate into investigations wholly foreign to the matters in question.

2. SAME—*medical books—extracts read therefrom—not evidence.* And in such case, where the State's attorney, in his argument to the jury, read from medical books not in evidence, or proved to be authority upon the subject, it was the duty of the court to instruct the jury that such books were not evidence, but theories simply, of medical men.

3. SAME—*testimony given in another case—and in another State—inadmissible.* It was error for the court to permit to be used in evidence against the prisoner the testimony of a professor of chemistry, given in another case and in another State, and reported in the Criminal Reports, no opportunity having been had either to cross-examine such witness or to meet his testimony by other evidence.

4. TRIAL—*in criminal cases—improper conduct of counsel in address to the jury—duty of court.* And where, in a capital case, counsel, in his argument to the jury, made a statement, against objection, that he had a witness by whom he could have proved a certain declaration made by the prisoner, stating it, but that she was sick, such declaration being a serious admission against him: *Held,* that such conduct was improper, and that the court should have excluded the statement from the jury.

5. CRIMINAL LAW—*accessory equally guilty—distinction between accessories before the fact and principals abolished—not after the fact.* Under our statute, the distinction between accessories *before* the fact and principals, is abolished, but this is not true as to accessories *after* the fact.

6. SAME—*accessory after the fact—may be convicted—though indicted as a principal.* Under our criminal code a party may be convicted as an accessory after the fact, and punished accordingly, though indicted as a principal.

7. TRIAL—*in criminal cases—rights of accused.* In cases of this character, where the proof showed that, if accused was guilty at all, she could only have been so as an accessory after the fact, it is proper and right for the court, in its

instructions to the jury, to inform them, that if the prisoner had given any explanation of the circumstances proved against her, showing them to be consistent with innocence of the charge, they should favorably consider them.

8.  EVIDENCE—*admissions—weak evidence—except where made with a full knowledge of all the facts.* . Admissions may be weak, or the strongest kind of evidence. Of the latter, when the party making them has full knowledge of all the facts.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. CHARLES R. STARR, Judge, presiding.

The opinion states the case.

Messrs. HURD, BOOTH & KREAMER, for the plaintiff in error.

Mr. R. G. INGERSOLL, Attorney General, for the people.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court :

The plaintiff in error, Harriet A. Yoe, was indicted in the Livingston Circuit Court, jointly with one John W. Youmans, for the murder of James Yoe, her husband.   Youmans escaped arrest by flight, and the plaintiff in error, on her trial, was found guilty of manslaughter and sentenced to confinement in the penitentiary for eight years.

To reverse this judgment the record is brought to this court by writ of error, and various errors assigned.

The points made upon the record are that the witness, Haskins, who acted as " a detective," should have been required to answer the question of the defendant's counsel, as to what was the character of his associates in his business as a detective.

The plaintiff's counsel argues, that in a capital case, the prisoner had a right to show the character of the witness, for the purpose of affecting the credit to be given his testimony. Though much latitude is allowed, on cross-examination, in a capital case, we cannot perceive the necessity or propriety of

this inquiry, and if pressed, might degenerate into investigations wholly foreign to the matter in controversy.

Another point made is, that the attorney for the people was permitted, against the objections of the prisoner, to read to the jury copious extracts from medical works, which had not been introduced in evidence, and which had not been proved by any witness to be authority, and to state to the jury that what he had read was authority upon the subject of poison by arsenic; and further, that the court allowed the State's attorney to read to the jury, against the objections of the prisoner, the evidence of Charles H. Porter, who, as professor of chemistry, had given testimony in the case of *The People* v. *Mary Harting*, 4 Parker's Crim. Rep. 297, as evidence in the case on trial.

These were errors. If the State's attorney in such a case, or in any case, read from medical books, in his argument to the jury, the court should instruct them that such books are not evidence, but theories simply, of medical men. To permit testimony given in another State to be used as evidence against a prisoner on trial in this State, was the height of injustice, as the prisoner had no opportunity to cross-examine the witness, or to meet his testimony by other evidence. It may be that Mr. Porter's ideas were all perfectly correct, but they were not proved to be so—there was no evidence before the jury that they were correct. The symptoms of poisoning by arsenic are various, and what they are, are facts which must be proved by competent testimony, like any other fact in the case.

Again, the court should not have permitted the State's attorney to make to the jury, in his closing argument, the statement that he had a witness by whom he could prove a certain declaration of the prisoner, which must have fallen upon the jury with crushing effect. It was not legitimate argument for the State's attorney, and was so out of place in a capital case, that the court should have excluded it from the jury.

The principal question, however, made upon the record is, can a party indicted for murder, be found guilty as an accessory after the fact?

By our statute, an accessory before the fact is considered as a principal, and is punished accordingly; an accessory after the fact, is punishable by imprisonment for a term not exceeding two years, and fined in a sum not exceeding five hundred dollars, in the discretion of the court.

It becomes necessary to discuss this proposition, in view of the verdict found in this case and the judgment, as the case will be remanded for a new trial.

It is apparent from the verdict—a sentence of eight years in the penitentiary—that the prisoner was convicted of manslaughter, of the guilt of which there is not the slightest evidence. She is a murderess, or an accessory after the fact. There is no middle ground upon which she can stand.

The jury, perhaps, were in some degree influenced to this conclusion by the fourth instruction given for the people, in which they were told that in this State the distinction between principal and accessory was abolished, and that they were deemed principals and punished as such.

This is true only as it relates to accessories before the fact. The jury being told that the distinction between a principal and accessory after the fact was abolished, that as they could not find her guilty as principal, they would find her guilty of manslaughter, whereas, if they had been properly instructed, that she could be punished as an accessory after the fact, of which there is some evidence, the jury would have so found.

We can perceive no reason why, under our statute and practice in criminal cases, an accessory after the fact should not be convicted before the principal is tried. In this very case, the principal criminal has escaped. Does not justice demand that one who acted a subordinate part in the tragedy shall be punished according to her offense?

It has been often decided by this court that a party indicted for murder may be found guilty of manslaughter, and one indicted for burglary may be convicted and punished for larceny.

The only reason urged why this may not be, is, that the party is taken by surprise, and not understood to be prepared to defend against a charge not specifically made; yet it is the constant practice in our courts.

By analogy, then, authority on the point not being cited, we are of opinion, a party may be convicted as an accessory after the fact, though indicted as principal, and punished accordingly. The principal in this case may never, and probably never will, be arrested. If the prisoner did know of his guiltiness, and failed to communicate it to a magistrate, she has incurred the penalty of the law, and should suffer the punishment the law attaches to her crime. It was error to give the fourth instruction as given.

It is also claimed by plaintiff in error, that the court erred in refusing the sixth and seventh instructions asked by her. Without saying the instructions should have been given as framed, we are of opinion the prisoner was entitled to the benefit of that acknowledged principle of law, as of justice, that if she could give an explanation of circumstances proved against her, showing them to be consistent with innocence of the charge made, the jury ought to consider those circumstances favorably. So, if the jury could be satisfied of the motives and reasons by which she was induced to apply to her daughter for testimony, or to flee, and that they were consistent with innocence of the charge, the jury should take the favorable view. Such is the humanity of the law. But the court, on its own motion, gave to the jury this instruction, which covers the ground of complaint. It is this:

"The jury are instructed, if they believe, from the evidence, that the accused believed that the circumstances surrounding

her were calculated to awaken suspicion against her, and that she was ignorant of the nature of evidence and the course of criminal proceedings, and under such belief she was induced by Youmans to fabricate testimony, they may take the facts into consideration in accounting for her conduct in so doing.".

The court properly refused the ninth and tenth instructions as asked by the prisoner.

The presence of the influences named should be shown,— not their absence,—to justify a rejection of the testimony. As to the tenth instruction it may be said, in certain cases admissions are weak evidence; but again, under other circumstances, as when the party making them has full knowledge of all the facts, they are the strongest kind of evidence, for who, innocent of crime, and knowing himself to be so, would make guilty admissions against himself? Should he do so, the belief would be well founded that he was guilty, and his admissions were the result of conscientious compunctions.

For the reasons given, the judgment is reversed and the cause remanded, that a new trial may be had.

*Judgment reversed.*