JONATHAN GRAVES *et al.*

*v.*

PRESLEY COLWELL.

1. CONVEYANCE—*presumption as to grantee when father and son have the same name.* Where a father and son have the same name, and a conveyance of land is made without designating whether to the father or the son, the law will presume that the father was intended for the grantee, in the absence of proof to the contrary.

2. SAME—*burden of proof as to grantee.* Where a· deed is made to one of two persons of the same name, being father and son, it devolves on the party claiming under the son to introduce evidence sufficient *prima facie* to overcome or rebut the presumption of law that the grant is to the father, and

thereby the *onus* will be shifted to the party claiming under the father, and he will be bound to produce proofs sufficient to overcome or at least equal in probative force the case of the adverse party.

3. PRESUMPTION OF LAW—*its value when rebutted.* Where a rebuttable presumption of law is overcome by proofs, and the burden shifted, then the conflicting evidence on the question of fact is to be weighed, and a verdict in civil cases rendered in favor of the party whose proofs have most weight; and in this process the presumption of law loses all that it had of mere arbitrary power, and is of value only as it has probative force, except it be that on the entire case the evidence is equally balanced, in which event the arbitrary power of the presumption of law will settle the issue in favor of the proponent of the presumption.

4. SAME—*value as evidence.* In an evidential aspect, a given presumption of law may have either more or less of probative value, dependent upon the character of the presumption itself and upon the circumstances of the particular case. Some legal presumptions are more probable and inherently stronger than others, and so differing circumstances may give differing degrees of probability to one and the same legal presumption.

5. EVIDENCE—*degree to authorize a finding of an issue.* In civil actions neither party is required to produce more than a preponderant weight of evidence. Where a defendant gives evidence *prima facie* sufficient to overcome a legal presumption against him, and the plaintiff then offers counter evidence, it is error to instruct the jury to find for the plaintiff unless the defendant has overcome the presumption, by proof, *to the satisfaction of the jury.* Such an instruction is equivalent to requiring proof, beyond a reasonable doubt, from the defendant.

6. SAME—*circumstances to show which of two persons was grantee in a deed.* Where a deed was made to one of two persons of the same name, the one the father and the other his son, both living together and occupying the premises conveyed, it is erroneous to exclude from the consideration of the jury, by instruction, the character and circumstances of the occupancy, as bearing upon the question whether the deed was to the father or to the son. Telling the jury that such circumstances create no presumption may be understood as excluding their consideration as evidence.

7. INSTRUCTION—*singling out particular points.* An instruction which calls special attention to particular points in the evidence which are indecisive, and mere circumstances bearing upon an issue of fact, and omits all reference to other important circumstances in proof, is objectionable.

8. SAME—*as to presumption from facts proved.* An instruction which, after stating one or more circumstances tending to prove a fact in dispute, tells the jury that if they believe such circumstances then the law presumes the fact, is erroneous, as ignoring the distinction between presumptions of law and of

fact. The jury may draw inferences of fact from the evidence, but the court can not, as a matter of law.

9. ESTOPPEL—*recital in deed to stranger.* The recitals in a deed from a person under whom the plaintiff in ejectment does not claim in any manner, are not evidence against him, and can not estop the plaintiff from claiming title through another.

10. In ejectment the defendant can not set up and rely on matters *in pais,* which might estop the plaintiff from recovering against a third person claiming the premises, but having no title, who is not a party to the suit, and under whom the defendant does not claim.

APPEAL from the Circuit Court of Stark county; the Hon. J. W. COCHRAN, Judge, presiding.

This was ejectment by appellee, the plaintiff below, against appellants, the defendants below, to recover a valuable tract of land in Stark county. Mirandus B. French was the common source of title.

Appellee's chain of title was a deed from French to Thomas Colwell, bearing date October 14, 1856; a deed from Thomas Colwell, Sr., and wife, to Adolphus Colwell and appellee, bearing date November 9, 1858; and a deed from Adolphus Colwell to appellee, bearing date October 17, 1874.

The chain of title of appellants was the deed from French to Thomas Colwell, dated October 14, 1856; a deed from Thomas Colwell, Jr., to Presley Colwell, bearing date August 11, 1859; a deed from Presley Colwell and wife to Jefferson Trickle, bearing date October 8, 1864; a deed from Jefferson Trickle and wife to F. F. Brockway and Andrew J. Scott, bearing date October 18, 1869; and a deed from said Brockway to said Scott, who is one of the appellants, bearing date August 17, 1872. The same deed from French was the first link in each chain of title.

It appeared, from the evidence, that Thomas Colwell, Sr., and Thomas Colwell, Jr., were father and son, and lived together, and that both they and French, the grantor in the first deed, had been dead for many years before this litigation arose.

On the trial, before a jury, in the Stark circuit court, appel-

lee introduced his chain of title and rested his case. Appellants then introduced their chain of title, and evidence tending to prove that Thomas Colwell, the younger, was the Thomas Colwell indicated in the deed from French. Appellee then, in rebuttal, introduced evidence tending to prove that Thomas Colwell, the elder, was the Thomas Colwell intended in the deed. The verdict of the jury and the judgment of the court were for appellee. The record is brought to this court by appeal.

Among the errors assigned are, that the court gave improper instructions for the plaintiff below; that the court refused to give proper instructions asked by the defendants below; that the verdict of the jury was contrary to the law and the evidence; and that the circuit court erred in overruling the motion for a new trial.

Messrs. M. SHALLENBERGER & SON, for the appellants.

Mr. M. A. FULLER, and Mr. J. E. DECKER, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The plaintiff made out a *prima facie* case by availing himself of the presumption of law that the father and not the son was intended by the deed from French. *Lepiot* v. *Browne,* 6 Mod. Rep. 198; *Kincaid* v. *Howe,* 10 Mass. 203; *Padgett* v. *Lawrence,* 10 Paige, 170; *The State* v. *Vittum,* 9 N. H. 519; 2 Wharton's Ev. § 1273.

It, then, devolved on defendants to introduce evidence sufficient *prima facie* to rebut this legal presumption, and, as they did so, they would have been entitled to a verdict if the case had stood still there. The case of the defendants, as disclosed by their testimony, considered in and of itself, rebutted the legal presumption, and thereby the *onus* was shifted back to plaintiff, and he was bound to produce proofs sufficient to overcome, or at least equal in probative force, the case of the defendants. Plaintiff did introduce certain rebutting evidence,

and, he having done so, the verdict of the jury should have been in conformity with the preponderance of evidence on the whole case. If the testimony of defendants was of greater probative force than the rebutting evidence of plaintiff added to the probative value of the legal presumption, then the verdict should have been for them. If the evidence in the concrete case, including the evidential weight of the presumption of law, was in equilibrium, then plaintiff might still have availed himself of the presumption of law, as an arbitrary rule of law, and been entitled to recover.

It has been said, that presumptions of law derive their force from *jurisprudence* and not from *logic*, and that such presumptions are arbitrary in their application. This is true of irrebuttable presumptions, and, primarily, of such as are rebuttable. It is true of the latter until the presumption has been overcome by proofs, and the burden shifted; but when this has been done, then the conflicting evidence on the question of fact is to be weighed and the verdict rendered, in civil cases, in favor of the party whose proofs have most weight, and in this latter process the presumption of law loses all that it had of mere arbitrary power, and must necessarily be regarded only from the standpoint of logic and reason, and valued and given effect only as it has evidential character. Primarily, the rebuttable legal presumption affects only the burden of proof, but if that burden is shifted back upon the party from whom it first lifted it, then the presumption is of value only as it has probative force, except it be that on the entire case the evidence is equally balanced, in which event the arbitrary power of the presumption of law would settle the issue in favor of the proponent of the presumption.

Regarded in its evidential aspect, a given presumption of law may have either more or less of probative value, dependent upon the character of the presumption itself and upon the circumstances of the particular case in which the issue may arise. Some legal presumptions are more probable and inherently stronger than others. So, also, differing circumstances

may give differing degrees of probability to one and the same legal presumption. A promissory note is made to A B, and it turns out there are two persons of that name in the community,—a father and son. The question of identity arises, and, primarily, as fixing the burden of proof, the law says it is presumed the father was intended. Thus far the presumption is judicial and arbitrary. An issue is formed, and the son establishes, *prima facie*, that he and not the father was indicated, and the father then offers rebutting evidence. Now, this issue, thus made, is to be determined by the weight of evidence and upon the whole case, and in determining such issue the presumption has lost (unless there be an equilibrium) its merely arbitrary character, and is entitled only to its logical value. If A B, the son, was, at the date of the transaction involved in the controversy, a mere infant of tender years, wholly unacquainted with business affairs, and the father was engaged in the active pursuits of life, the probability that the father was meant is very great, and the legal presumption would have much more of probative force than it would have in a case where the son was a mature man and in active business, and the father aged and retired from business.

In this case, the first and second instructions given for appellee were as follows:

"1. The jury are instructed, that where a deed is made to one of two persons of the same name, being father and son, the presumption of law, in the absence of evidence upon the subject, is, that the deed was made to the father and not to the son, and this presumption must prevail unless the defendants have overcome the presumption by proof, showing, *to the satisfaction of the jury*, that the deed was made to the son and not to the father; and in this case, if the testimony upon the question whether the deed was made to Thomas Colwell, Sr., or to Thomas Colwell, Jr., is so conflicting that the jury *can not say, from the evidence*, to whom the deed was made, then the jury must find that the deed was made to the father and not to the son, under the presumption of the law above stated.

" 2.   The plaintiff in this case having offered in evidence a
deed from Mirandus B. French to Thomas Colwell, and one
from Thomas Colwell to Adolphus Colwell and Presley Col-
well, Jr., and one from Adolphus Colwell to Presley Colwell,
Jr., the jury are instructed that these deeds offered in evidence
by him make a *prima facie* case in his favor, and the burden
of proof is upon the defendants to show, *to the satisfaction of
the jury,* that the Thomas Colwell from whom the plaintiff
claims title was not the person who, in fact, owned the land
and held the title for the same; and unless the jury believe,
from the evidence, that the defendant has overcome this *prima
facie* case, and shown, *to the satisfaction of the jury,* that the
Thomas Colwell who conveyed the land in controversy to
Adolphus Colwell and the plaintiff was not the owner of the
land, and did not hold the title to the same, they will find for
the plaintiff."

As we understand these instructions they are not in con-
formity with the views of the law we have herein expressed.
The jury must have understood they were required, notwith-
standing they may have believed that the defendants had made
out a *prima facie* defense, by proving circumstances of sufficient
weight to shift the burden of proof and thereby set aside the
rebuttable legal presumption that otherwise would have en-
abled plaintiff to recover without proving the material fact
in issue, and on which his case was predicated, nevertheless to
return a verdict for plaintiff, even though the weight of evi-
dence was against him, unless the preponderance of proof was
so greatly in favor of defendants as to satisfy their minds, a
thing which could only be accomplished by producing a state
of moral certainty, or in other words, by proving beyond a
reasonable doubt that the son and not the father was intended.
The instructions assume and the record shows the evidence
was conflicting; in that state of the case, it being a civil suit,
it was required of neither party more than that it should pro-
duce a preponderant weight of testimony.

These two instructions were, as applied to the evidence before the jury, erroneous, and probably misled them.

The fourth instruction for plaintiff was also objectionable. It called special attention to particular points in the evidence which were undecisive and mere circumstances, and omitted all reference to other and possibly more important circumstances in proof, and thereby gave undue importance to the particular points culled by the instruction.

The fifth instruction for appellee was argumentative, involved and difficult to apprehend. The real issue on trial was, as to which Thomas Colwell was indicated by the deed from French, and the matters suggested by the instruction were of moment only as they did or did not throw light on that question. The only legal presumption involved in the case was the one we have discussed. The instruction recognized the fact that father and son had lived together on the land in dispute, and there is no pretence to say the possession or presence of either was adverse to the claim or title of whichever of the two was invested with title. And yet, if there was anything in the circumstances or character of the occupancy by either or both that would throw light on the question of the identity of either with the grantee in the French deed, then the jury would have a right to consider such circumstances or character of occupancy, and deduce therefrom any presumption of fact the same might, in their view, in conjunction with the other proofs before them, have justified. The statement in the instruction that the circumstances mentioned therein " created no presumption " might have been well enough if it had been confined to a presumption of law and accompanied by the information that if the circumstances or character of the possession by both or either tended, in the opinion of the jury, to identify the grantee in the deed, then they might be considered by the jury for what, if anything, they deemed them worth. As the instruction was given it must have been understood by the jury as excluding from them all consideration

of such character and circumstances of occupancy. The instruction should not have been given.

The second instruction asked by appellants was properly refused. It was to the effect that the deed from French afforded no legal presumption that it was made and delivered to Thomas Colwell, the father. That there is such a presumption of law has, as we have seen, been frequently decided both in England and in this country, and the doctrine is fully recognized in the books.

The fourth of appellants' instructions was also bad, and there was no error in refusing it. It states one or more circumstances tending to prove the son was intended, and then instructs the jury that if they believe such circumstances, then "the presumption of law is, that said Thomas Colwell in said deed means Thomas Colwell the younger, and in such case they should find for defendants." The instruction wholly ignores the distinction between presumptions of law and presumptions of fact. The matters stated were circumstances of proof which vested the jury with a discretion to draw therefrom the inference sought, but they presented no case that required or justified the court peremptorily and as matter of law to make such inference.

There was no error in refusing appellants' ninth instruction. Plaintiff did not claim through Thomas Colwell the younger, and the recitals in the latter's deed to Presley Colwell were not binding on plaintiff, nor did they have any effect to estop him from claiming the land. If plaintiff has title to the land in controversy, it is through the deed of November 9, 1858, from the senior Colwell to Adolphus Colwell and plaintiff, and the title vested, if at all, in the grantees in said deed, then. We are unable to appreciate the logic which would make the recitals contained in the deed of the younger Colwell, a stranger to their title, executed to a third party nearly a year thereafter, an estoppel to prevent their claiming through their then already accrued title.

Instructions fourteen and fifteen asked by appellants were also properly refused. If the conveyance was as a matter of fact to the elder Colwell, then the subsequent deed, dated December 15, 1856, and executed by the younger Colwell to White, and in reference to the delivery of which there is a conflict in the evidence, could convey no title to White, even if delivered, and there could, consequently, be no outstanding title in White. It may be that under the circumstances suggested by these instructions, Colwell, Sr., could not, as against White, recover the land, but it would not be on the ground of title in White or in Colwell, Jr., but on account of an equitable estoppel growing out of the *matters in pais* stated in the instructions. But, as this is a controversy to which neither White nor any one claiming from him is a party, these *matters in pais* have no application here, except as they may shed light on the question of identity, and there is no place here for the claimed estoppel.

The matters set forth in the eighteenth of appellants' instructions were circumstances in evidence calculated to raise in the minds of the jury a presumption of fact, but the distinction heretofore suggested between such a presumption and a presumption of law was ignored in said instruction. The conclusion sought to be deduced was one of fact, to be determined by the jury, and not one to be declared by the court as matter of law. The instruction was also objectionable for the same reason that the fourth instruction given for plaintiff was vicious.

The nineteenth instruction asked was of like character; it also sought to substitute the court for the jury, and declare as matter of law, from certain evidential facts a certain other fact was presumed. It was properly refused.

The evidence in this record impresses us that the verdict of the jury was against its weight. As the case must be submitted to another jury and the testimony is voluminous, we do not care to discuss it; more especially so, as upon a second trial there may be additional or variant proofs. Upon the

trial already had the instructions of the court were of such character as naturally led to and almost compelled the verdict that was rendered. The instructions given cast an undue burden of proof upon defendants and were otherwise calculated to prejudice their rights.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.

*Judgment reversed.*