## FRANK W. WACASER

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield November 1, 1890.*

1.   CRIMINAL LAW—*to justify or excuse a homicide—degree of proof required—of an instruction on that subject.*   An instruction in a criminal case which requires the accused to justify or excuse a homicide, or establish his defense to the satisfaction of the jury, is error, as calling for a degree of proof not required by the law.

2.   On the trial of one upon a charge of murder, the court, of its own motion, instructed the jury, that "if a man kills another, and the killing being proven or admitted, and then sets up self-defense as a defense to the indictment, the jury ought always to be *satisfied*, from the evidence, that the killing was done under an honest belief on the part of the defendant that it was necessary to save himself from death or great bodily harm," etc.: *Held*, that the instruction was erroneous, as calling for a higher degree of proof than was required of the defendant.

3.   SAME—*reasonable doubt—propriety of giving an instruction.*   On a criminal prosecution the defendant asked, and the court refused, this instruction:   "A reasonable doubt is one which arises from a careful and impartial consideration of all the evidence, and which, in the graver transactions of life, would cause a prudent and reasonable man to hesitate and pause." There was no other instruction given which embodied the full meaning of a reasonable doubt, as conveyed by the refused instruction:   *Held,* that the court erred in refusing the instruction.

4.   INSTRUCTIONS—*given by court of its own motion—requisites.*   Where the trial court throws aside all the instructions asked by one or both parties, and prepares written instructions of its own, the latter must fairly instruct the jury on all the legal questions involved in the case, and it must appear that no injury has been done to the defeated party by the refusal of the instructions asked by him.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Mr. JOHN R. EDEN, Mr. F. M. WRIGHT, and Mr. M. W. MATTHEWS, for the plaintiff in error:

It was error to instruct the jury that they "ought to be satisfied, from the evidence, that the killing was done under an

honest and sincere belief," etc.   This was to require the de-. fendant to establish his defense by a degree of proof not required in civil cases.   *Hopps* v. *People,* 31 Ill. 385; *Hoge* v. *People,* 117 id. 35; *Alexander* v. *People,* 96 id. 96; *Herrick* v. *Gary,* 83 id. 89.

It was error to refuse defendant's ninth instruction asked, defining reasonable doubt.   *Miller* v. *People,* 39 Ill. 459; *Dunn* v. *People,* 109 id. 639; *May* v. *People,* 60 id. 119.

Mr. GEORGE HUNT, Attorney General, Mr. JOHN E. JENNINGS, State's Attorney, and Mr. HORACE S. CLARK, for the People:

The principles of the refused instructions, so far as legal and proper, were embodied in those given by the court.

As to reasonable doubt, see *Mullins* v. *People,* 110 Ill. 42; *Davis* v. *People,* 114 id. 86; *Leigh* v. *People,* 113 id. 372; *Bressler* v. *People,* 117 id. 437; *Crews* v. *People,* 120 id. 317.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

At the November Term, 1888, of the Circuit Court of Moultrie County, the plaintiff in error, Frank W. Wacaser and one Owen M. Babb were indicted for the murder of John B. Cline in said county on May 17, 1888.   A trial was had at the April term, 1889, of said court, which resulted in a verdict of not guilty as to Babb and a disagreement of the jury as to the plaintiff in error.   Afterwards in June, 1889, the cause was removed by change of venue to the Circuit Court of Champaign County, where a second trial was had in November, 1889, and, by the verdict of the jury, the defendant was found guilty of manslaughter, and his punishment fixed at twenty-five years in the penitentiary.   Judgment was rendered upon the verdict after the overruling of motions for new trial and in arrest of judgment.

In the neighborhood where the farms of these parties were located the public road runs north and south; Wacaser lived on the east side of the road; north of him and on the west

side of the road lived Bryan, a brother-in-law of Cline, while still further to the north lived Cline, the deceased. North of his house, and in the north east corner of his farm, Bryan had a pasture, containing ten acres, enclosed by a board fence on the north and by a board and wire fence on the west. Wacaser had rented, and planted in corn, some land belonging to his father and lying north of Bryan, and he also owned some land to the west of Bryan. The land of Bryan lying west of his pasture had been recently ploughed.

Westward from the public road, and along the fence on the north side of Bryan's pasture, runs a "turning row" which is wholly upon the land belonging to Wacaser, or rented by him from his father. Prior to the homicide there had been some dispute between Bryan or Cline and Wacaser as to the boundary line between the Wacaser land and the Bryan land; plaintiff in error had expressed his unwillingness that Cline should go upon his land; he seems to have claimed that Bryan's north fence was upon his land, and there is something in the evidence to the effect that he had once had Bryan indicted.

Early on the morning of May 17, 1888, plaintiff in error sent three men to work in his field lying west of Bryan's pasture. Shortly afterwards he himself started in a wagon with his hired man named Babb, and a boy about fifteen years old, named Cunningham, to go to the same field for the purpose of planting potatoes. He travelled northward on the public road until he reached the north east corner of Bryan's pasture, then turned from the public road into the turning row and drove westward along the turning row, until he had reached a point about seventy five or one hundred yards west of the northwest corner of Bryan's enclosure. Here he looked back and saw the deceased driving a team, behind which he was walking, from the public road into the turning row. He hallooed to Cline and motioned to him to go southward on the public road, but Cline turned into the turning row and drove westward. Plaintiff in error then gave the reins to Cunning-

ham, jumped out of the wagon remarking, "there comes a man
I don't want to cross my land," and went eastward towards the
deceased. The latter in the meantime turned his team south-
ward upon Bryan's land and along the west fence of Bryan's
pasture, and, throwing the lines over the second or third post
of the fence, returned to meet Wacaser. A fracas then oc-
curred between the two men near the northwest corner of the
pasture in the turning row, or a few feet south of it, and near
the west fence of the enclosure.

During the fracas the plaintiff in error stabbed Cline with
a knife or dirk. The deceased went through the fence into
the pasture, and, while going southeast towards Bryan's house,
fell upon the ground and died before reaching the house.

We forbear entering into a detailed discussion of the evi-
dence, as the case must be reversed and sent back for another
trial for the reasons hereinafter stated. It was sought, upon
the trial below, to justify the homicide upon the ground of
self-defense. It is claimed upon the part of the defendant,
that the fatal blow was given under circumstances sufficient
to create in his mind a well-grounded belief that he was in
danger of losing his life, or suffering great bodily harm. It
was for the jury to say whether or not the theory of self-defense
was established, but it was important, under the circumstances
of the case as disclosed by the record, that they should be
accurately instructed.

The defendant asked the trial court to give twenty instruc-
tions, all of which were refused. The trial judge then of his
own motion gave and read to the jury an instruction written
and prepared by himself. No instructions seem to have been
asked by the prosecution, but whether such was the fact or
not, no other instruction than that prepared by the court was
given. The instruction so given is very long, consisting of
thirty six paragraphs.

In *Hill et al.* v. *Parsons et al.* 110 Ill. 107, all the instruc-
tions requested by both sides, seven on behalf of the plaintiffs

and eight on behalf of the defendants, were refused, and three instructions carefully prepared by the court were read to the jury. In that case it was said: "Whether any of defendants' instructions contained correct propositions of law or not, is not a material inquiry here, as the instructions given by the court fairly instructed the jury on all legal questions involved in the case. No injury was done by the refusal of the instructions prepared by them." It may be laid down as a sound rule that, where the trial court throws aside all the instructions asked by one or both of the parties, and prepares written instructions of its own, the latter must fairly instruct the jury on all the legal questions involved in the case, and it must appear that no injury has been done to the defeated party by the refusal of the instructions asked by him. As to more than a dozen of the instructions which the defendant in this case requested the court to give, it is not claimed that they were erroneous, but it is insisted that their substance was embodied in the instruction prepared by the court. This is, for the most part, true. But we think that the twenty sixth paragraph of the given instruction was calculated to mislead the jury. Its first clause is as follows: "If a man kills another and the killing be proven, or admitted, and then sets up self-defense as a defense to the indictment, the jury ought always (to) be *satisfied* from the evidence, that the killing was done under an honest belief on the part of the defendant, that it was necessary to save himself from death, or great bodily harm," etc.

Instructions, which require the proof to be such as to produce "*satisfaction*" in the minds of the jury, have been several times condemned by this court. In *Herrick* v. *Gary*, 83 Ill. 85, which was a civil case, the instruction was: "the plaintiff must show, by the evidence in the case, *to the satisfaction* of the jury," etc. We there said of this language: "it places the standard of the degree of proof required higher than the law demands in controversies of this character. It is enough that the jury shall believe, from the evidence, that the essen-

tial facts are true. The jury may so believe, although the same may not be shown by the evidence to the satisfaction of the jury. This instruction requires not merely that the evidence shall produce belief in the mind of the jury of the facts alleged, but that such belief shall be so strong as to be satisfactory. This is perhaps not quite so strong as to require a belief beyond a reasonable doubt, but it approximates it, and which is only required in criminal cases. The mind cannot well be said to be satisfied as to a given proposition, so long as such matter remains at all in doubt. For this reason, the instruction must be condemned."

Later, in *Graves et al.* v. *Colwell,* 90 Ill. 612, also a civil suit, an instruction, which required a fact to be proved "to the *satisfaction* of the jury," was interpreted as requiring the preponderance of proof to be so greatly in favor of such fact as to satisfy their minds, "a thing which could only be accomplished by producing a state of moral certainty, or, in other words, by proving beyond a reasonable doubt" such fact.

Later still, in *Alexander* v. *The People,* 96 Ill. 96, the principle announced by the civil cases was applied to a criminal case. In the *Alexander* case, the accused sought to show that he was justified or excused in committing the homicide, and the condemned instruction told the jury, that it was "incumbent upon the defendant satisfactorily to establish such defence." We there said: "This is stating the rule of evidence broader than the law will warrant. The statute provides that he is only bound to prove the circumstances that justify or excuse the homicide as any other fact is to be proved, and as this instruction cast upon the accused what may have well been understood to be a higher degree of proof, it is plainly erroneous and may have prejudiced the defence."

In view of the interpretation thus given by this Court to the language used in the above quoted clause of the given instruction, the clause in question must be regarded as erroneous.

Again, the ninth instruction asked by the defendant should have been given. It is as follows: "A reasonable doubt is one which arises from a careful and impartial consideration of all the evidence, and which, in the graver transactions of life, would cause a prudent and reasonable man to hesitate and pause." This definition of "reasonable doubt" may not. be quite so full and accurate, as the definition already approved of by this Court in a number of cases, (*Spies et al.* v. *The People,* 122 Ill. 1,) but it is substantially the same as that laid down in *Dunn* v. *The People,* 109 Ill. 635. The defendant was entitled to have the jury instructed as to what a reasonable doubt was, if he submitted an instruction correctly defining that term. We find no definition of reasonable doubt in the instruction given by the court, which embodies the full meaning conveyed by the refused instruction.

For the reasons here indicated the judgment of the Circuit Court is reversed, and the cause is remanded to that court.

*Judgment reversed.*