VITO FOGLIA *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 23, 1907.*

1. MURDER—*instruction assuming that accused was assailant is improper if evidence is conflicting.* An instruction for the People, in a murder trial, which assumes, in stating the doctrine of self-defense, that the accused was the assailant, is improper, where the evidence as to whether the deceased or the accused was the assailant is conflicting or where it tends to show that the deceased was the assailant.

2. SAME—*an instruction, correct in the abstract, may be improper.* Giving an instruction, in a murder trial, stating that the law of self-defense does not imply the right of attack in the first instance or permit of an action done in retaliation or revenge, is improper, where there is no evidence whatever upon which to base the instruction.

3. SAME—*when refusal of an instruction is error.* Refusal of a correct instruction, asked by the accused, defining reasonable doubt, is error, in a murder trial, where the only other instruction on the subject is given at the request of the People and merely states what is *not* reasonable doubt, without covering in any way the explanation of reasonable doubt as given by the refused instruction.

4. SAME—*the rule as to conviction for manslaughter where two persons are indicted for murder.* Where two persons are indicted for murder it is not error to give to the jury an instruction as to the form of their verdict, stating that they may find one defendant guilty of murder and the other guilty of manslaughter, if the evidence is such as to justify the instruction.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

A. J. HANLON, (FRANCIS BORELLI, of counsel,) for plaintiffs in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (F. L. BARNETT, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiffs in error were tried by a jury in September, 1906, in the criminal court of Cook county, and the father, Vito Foglia, was found guilty of the murder of one Giovanni Toscano and sentenced to fourteen years in the penitentiary. Tony Foglia, the son, then aged about fourteen years, was found guilty of manslaughter and sentenced to the reformatory.

A stenographic report of the testimony was not kept, and the record as to the statements of witnesses has been compiled and agreed upon by counsel from their best recollection of what was said at the trial.

The homicide in question took place between eight and nine o'clock on the evening of October 15, 1905, on LaSalle street, Chicago, near the fire-plug in front of a row of buildings known as 405-409. When the witnesses for the State first appeared upon the scene, attracted by the shots, plaintiff in error Vito Foglia was lying on the sidewalk, face up, and Toscano, the man who was killed, was lying on top of him, face down. According to the testimony of the State, plain-

tiff in error Tony Foglia, at the time he was first seen, was standing in the street near the two prostrate men, shooting with a revolver. He then came over to where the two men were and pulled Toscano off of Foglia and turned him over, face upward, on the sidewalk. Toscano was then dead. When Vito Foglia got up from the ground his face and head were wounded with several cuts and covered with blood. He had a revolver in his hand, which the policeman who arrested him stated was a 38-caliber, with four shells empty and one loaded. This policeman stated that he did not find any revolver or knife on the person of deceased, but found a rusty four-bladed knife lying under deceased's body when he took him up; that the knife was closed, but was broken in such a way as to have a sharp edge; that one blade was missing entirely.

The State's witnesses substantially agree on the facts of the shooting as above given. No disinterested witness testified as to the cause or beginning of the trouble. Apparently no person outside of the deceased and the plaintiffs in error was present when the difficulty began.

Plaintiff in error Vito· Foglia lived with his family a little distance north of where the shooting occurred. His story is, that on the Sunday night of the trouble, about 8:30 o'clock, he left his house and went out on the sidewalk to call his son Tony, who was playing in the street with other boys, and when he got to the sidewalk the deceased (Toscano) assaulted him, (Vito,) stating that he was going to kill him, and immediately struck and knocked him to the sidewalk and jumped upon him; that he (Vito) having a revolver, fired three or four shots in the air and called out, "Help me, my sons! He is killing me!" or words to that effect; that deceased was striking him and cutting him on the head with a knife, and that thereupon his son Tony shot at the deceased. The witness testified that he had known the deceased for some time intimately but had never had any trouble of any kind or character with him; that he

was arrested and taken to the emergency hospital, where the wounds on his head and face were sewed up.

Plaintiff in error Tony Foglia stated that he was playing on a wagon on the opposite side of LaSalle street with some other boys whose names he did not remember. As he was playing he heard some shots and his father cry out, "Help me, my sons! They are killing me!" or words to that effect. As he ran towards his father he saw him on the ground with another man on top, striking him with something in his hand; that some person unknown to the witness placed a 32-caliber revolver in his hands and told him to protect his father; that he went near to where his father was lying while the other man was on top, striking him, and fired two or three shots; that after firing the shots, on seeing the man on top not moving, he pulled the deceased off of his father.

The manager of the emergency hospital where Vito Foglia was taken to have his wounds dressed, testified that the records of the institution showed that there were five wounds in the patient's head and face, necessitating the insertion of twenty stitches.

The coroner's physician who made the post-mortem examination testified that he found four gun-shot wounds in the body of the deceased; that two of them were neck wounds made by two 38-caliber shots from before backwards, the balls escaping without penetrating any vital organs; also a wound in the back, caused by a 32-caliber bullet entering between the ribs, passing through the lung to the heart, the ball being found in the right pleural cavity; also a wound in the side from a 32-caliber bullet, which passed between the ribs, through the stomach and upper border of the kidneys and lodged in the muscles of the back. In his opinion death was due to shock and hemorrhage from the gun-shot wound of the 32-caliber bullet which pierced the right lung and heart, causing instant death.

Pedro Foglia, another son of Vito, testified that he was on the second floor of a house in the vicinity, playing cards,

when he heard the shooting and ran out on the sidewalk; that he had no revolver or anything in his hand and did not fire any shots. The witnesses for the State did not contradict this testimony of Pedro or claim that he took any active part in the shooting, with the exception of one witness, who testified that about the time Tony Foglia pulled deceased off of Vito and laid him on the sidewalk, face up, Pedro came up and fired three or four shots at the body of the deceased as it lay on the sidewalk, face up.

Tony Foglia and Pedro Foglia ran away from the scene of the killing and went to Philadelphia, where they lived for some time under assumed names, but they testified that they afterwards came back on the advice of their counsel and surrendered themselves to the police. Pedro was put on trial with his father and brother, but at the close of the State's evidence the presiding judge ordered him discharged, and the State thereupon entered a *nolle pros.* as to him.

It is stated at the close of the bill of exceptions that "the theory that the State advanced was, that the Foglias laid in wait to assassinate the deceased and accomplished that purpose. The position taken by the defendants was, that the deceased mistook Vito Foglia for someone else and assaulted him without provocation, and that the shooting was done in necessary self-defense." We find nothing in this record that conclusively upholds the theory of either the State or defense. There is no positive evidence as to the beginning of the trouble other than that given by plaintiffs in error. In this state of the record the case called for care and accuracy in instructing the jury as to the law.

Several instructions were given that were prejudicial to plaintiffs in error. All the testimony agrees that at the time the fatal shot was fired,—and, indeed, when all the shots were fired,—plaintiff in error Vito Foglia was lying on his back on the ground, with the deceased on him, holding him down; and the testimony of the plaintiffs in error is to the effect that the deceased was at the time striking Vito on

the face and head with a knife or some other implement. The other testimony in the record is in harmony with their statements in this regard, except that it shows that the knife found under the body was closed. The wounds on Vito Foglia's face tend strongly to show that the deceased struck him with something. Instruction 66 given for the State is as follows:

"The court instructs the jury that before the acquittal of a defendant charged with assault with a deadly weapon is justified on the ground of self-defense, it must appear from the evidence, considered all together, that at the precise time the blow or blows constituting the assault charged were struck, it in good faith appeared to the defendant that he was in danger of losing his life or of receiving serious or great bodily harm and that the assault was committed under such belief, and it must also appear that the person assaulted by the defendant was the assailant, or that the defendant had really and in good faith endeavored to decline any further struggle before the assault charged was made by him."

This, in some respects, was the same instruction condemned by this court in *Filippo* v. *People,* 224 Ill. 212, and referred to in that case on page 216, where we said: "The instruction clearly implied that the court thought defendant was an assailant." The instruction here says, "at the precise time the blow or blows * * * were struck." The instruction is misleading in referring to blows on the part of plaintiffs in error, as there is no evidence to show that they struck any blows. But, taking it in its most favorable light for the State, the jury would naturally have inferred that the court believed that at the precise time the fatal shots were fired both plaintiffs in error still had an opportunity of declining further struggle. How could Vito Foglia, on the facts presented, have shown that he had declined further struggle? The jury might easily have inferred from this instruction that the court thought that the defendants were

the assailants, and this belief might well have been strengthened by the fact that the court gave for the State five other instructions as to the doctrine of self-defense, and the majority of them might readily have been construed by the jury in the same way. If the evidence is conflicting as to whether the accused or the other party was the assailant, an instruction for the People which assumes that the accused was the assailant is improper. *Hammond* v. *People,* 199 Ill. 173.

Instruction 71 given for the People stated to the jury that the law of self-defense does not imply the right of attack in the first instance or permit of action done in retaliation or for revenge. While this instruction as an abstract proposition of law is doubtless correct, there is nothing in the evidence to justify its being given in this case. It is apparently the same instruction that was condemned by this court in *Filippo* v. *People, supra,* referred to on page 217 of that decision. There is not the slightest positive evidence in this record that plaintiffs in error were in the first instance the attacking party, or that they, or either of them, were acting in retaliation or for revenge. The State appears to have tried the case on the theory that they were so acting, but the evidence did not justify the giving of this instruction in support of that view.

Complaint is also made by plaintiffs in error that the court refused to give their instruction numbered 1, as to the law of reasonable doubt. This instruction defines reasonable doubt in substantially the same language as was used by Chief Justice Shaw in *Commonwealth* v. *Webster,* 5 Cush. 320, and has been approved by this court in *Little* v. *People,* 157 Ill. 153. There was only one instruction given by the court as to the meaning of the term "reasonable doubt." This was instruction 15 for the State, and informs the jury, properly enough, that a doubt produced by undue sensibility is not a reasonable doubt, and that a juror should not create sources or materials of doubt by resorting to trivial and fanciful suppositions and remote conjectures, and

that the jurors are not at liberty to disbelieve as jurors if from the evidence they believe as men. But this instruction did not cover in any way the idea as to reasonable doubt conveyed by the refused instruction for plaintiffs in error. The instruction was entirely proper and should have been given in this case. *Wacaser* v. *People,* 134 Ill. 438.

In view of our holdings on the instructions already discussed it would be unnecessary to consider the other points raised by the briefs if it were not that they may arise on the next trial, and counsel appear to be entitled to the court's views on those questions.

Complaint is made that instructions 2, 3 and 7, offered by plaintiffs in error on the "presumption of innocence," were not given. We think this question was fairly covered by other instructions given. The same may be said as to instructions 4 and 5, offered by plaintiffs in error on the doctrine of the greater weight or preponderance of the evidence. We think the court correctly refused the sixth instruction offered by plaintiffs in error. It was not in entire harmony with the evidence.

The court, in instructing the jury as to the form of their verdict, among other forms gave the following: "They may find one defendant guilty of murder and the other defendant guilty of manslaughter." The jury followed this form of instruction, and found the father, Vito Foglia, guilty of murder, and the son, Tony Foglia, guilty of manslaughter. Counsel for plaintiffs in error contend that this form of verdict placed two separate and distinct crimes before the jury. With this we do not agree. It is said in Wharton's Criminal Pleading and Practice (8th ed. sec. 246): "Generally speaking, where an accusation  *  *  * includes an offense of an inferior degree the jury may discharge the defendant of the high crime and convict him of the less atrocious." To the same effect is Chitty's Criminal Law. (Vol. 1, p. 638.) This court held in *Carpenter* v. *People,* 4 Scam. 197, that on an indictment for murder the de-

fendant might be acquitted of murder and found guilty of manslaughter. (See, also, *Yoe* v. *People,* 49 Ill. 410; *Herman* v. *People,* 131 id. 594.) In *Ruth* v. *People,* 99 Ill. 185, this court held that on the trial of one under an indictment for burglary and larceny it was error to refuse an instruction to the effect that the jury might find the defendant guilty of both or either of said offenses, as the evidence warranted. A state of facts might easily be conceived under which two persons might be indicted as principals on the charge of murder, (*Usselton* v. *People,* 149 Ill. 612,) and yet one of them be properly convicted of murder and the other of manslaughter. While such an instruction as the one here given as to the form of the verdict might not be proper in all cases, as the evidence might not justify its giving, (*Lynn* v. *People,* 170 Ill. 527; *Bleich* v. *People,* 227 id. 80; *Koser* v. *People,* 224 id. 201;) yet we do not think the giving of this instruction in this case was error. It certainly did not injure Tony Foglia in any way, and we can not see how it worked to the disadvantage of Vito Foglia.

In support of their motion for a new trial plaintiffs in error introduced evidence tending to show that they were misled by one whom they employed as an attorney but who they afterward found was not licensed to practice; that therefore the case was not properly prepared for trial. The newly discovered evidence they claim they could have had at the trial if the case had been properly prepared was cumulative, and we do not think it would justify a reversal. Its character need not be discussed, as the case must be reversed for other reasons.

For the errors indicated in giving instructions not applicable to the facts in this case the judgment must be reversed and the cause remanded for such further proceedings as law and justice shall require.

*Reversed and remanded.*